**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**RICHARD KERRY DICKERSON**                                         **PLAINTIFF**

**v.**                                      **CIVIL ACTION NO. 5:13cv202-DCB-MTP**

**RAYMOND BYRD, ET AL.**                                       **DEFENDANTS**

**REPORT AND RECOMMENDATION**

THIS MATTER is before the Court on the Motion for Summary Judgment [67] filed by Defendant E.L. Sparkman, the Motion for Summary Judgment [69] filed by Defendants Conrad Artis, Raymond Briggs, Raymong Byrd, Corrections Corporation of America, David Newton, Leroy Pitts and Timothy Turnley, the Motion for Summary Judgment [72] filed by Plaintiff Richard Dickerson. Having carefully considered the motions, the submissions of the parties, and the applicable law, the undersigned recommends that the Motions [67] and [69] be GRANTED, Motion [72] be DENIED, and this matter is dismissed with prejudice.

**BACKGROUND**

Plaintiff Richard Kerry Dickerson, proceeding *pro se* and *in forma pauperis*, filed the instant civil rights action pursuant to 42 U.S.C. § 1983 on or about October 9, 2013.[1] The Plaintiff is a post-conviction inmate and has been in the custody of the Mississippi Department of Corrections ("MDOC") at all times relevant to this action. Though he is now housed at the Mississippi State Penitentiary, at the time of the alleged events giving rise to this lawsuit, the Plaintiff was housed at Wilkinson County Correctional Facility ("WCCF"). Plaintiff's claims and relief sought were

---

[1] *See* Complaint [1] at 4.

1

clarified and amended by his sworn testimony at a *Spears*[2] hearing held in this matter on April 21, 2015. The Plaintiff's claims and requested relief are set forth below.

### *Failure to Protect*

First, Plaintiff alleges that Defendants failed to protect him from an attack by other inmates. Specifically, Plaintiff states that he was being wrongfully housed in a unit that was primarily reserved for affiliated gang members, despite the fact that he was not a gang member. As a result, he alleges that on April 20, 2013, he was attacked by several other inmates. Plaintiff alleges that while he was waiting to take a shower, several gang members surrounded him and began to beat him with various weapons. Plaintiff alleges that he attempted to escape, but sustained injuries to his skull, and that has permanent damage to his eyesight and must wear braces on both legs.

Plaintiff alleges that he was taken to the medical unit later that day in order to be treated for his injuries. Plaintiff alleges that he there encountered Defendants Raymond Byrd, the then warden of WCCF, and E.L. Sparkman, the deputy commissioner of the Mississippi Department of Corrections, as well as WCCF employees Raymond Briggs and LeRoy Pitts. Plaintiff alleges that he asked the Defendants to move him out of his housing unit, but that Byrd, on behalf of the Defendants, replied that no prisoner was going to be moved. He also alleges that Byrd stated that the attack occurred because Plaintiff's housing unit was a violent and dangerous area of the prison.

Plaintiff alleges that he asked Defendants Artist and Newton, investigators at WCCF, to be moved approximately one week after the attack, but that they failed to do so. Plaintiff claims that they served him with a Rule Violation Report ("RVR") for the incident instead.

---

[2]*See Flores v. Livingston*, 405 Fed. App'x 931, 932 (5th Cir. 2010) (stating that allegations made at a *Spears* hearing supercede claims alleged in the initial complaint).

Finally, Plaintiff alleges that he asked Defendant Turnely, the manager of his housing unit, to be transferred a few days after the attack. Plaintiff alleges that Defendant Turnely was conspiring with other WCCF officials to keep Plaintiff in a dangerous housing unit, and that he failed to move the Plaintiff, but moved other inmates who were not injured in the April 20 attack.

Plaintiff states that he was transferred to SMCI approximately three months after the attack. He does not allege that he was harmed again after April 20.

### *Loss of Property*

Plaintiff also alleges that on May 21, 2013, various WCCF employees conducted a "shakedown" of his housing unit in order to confiscate weapons, as well as any metal or plastic material that could be converted into a weapon. Plaintiff alleges that during the shakedown, one of the guards took Plaintiff's watch. Plaintiff alleges that the watch was a gift from his wife, and that it is worth about $50. Plaintiff was not able to identify the WCCF employees who confiscated the watch. He claims that Defendant CCA, the company that managed WCCF during the relevant time period, is responsible for the incident because its employees participated in the shakedown.

### *Requested Relief*

Plaintiff requests that his watch be returned or that he be reimbursed for its value. He also requests an unspecified amount of monetary damages.

### **STANDARD**

A motion for summary judgement will be granted when "the record indicates that there is 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "The moving party must show

that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000). The court must view "the evidence in the light most favorable to the nonmoving party." *Id.* However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted). The nonmovant cannot survive a proper motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir. 1988); *see also Celotex*, 477 U.S. at 325-26. Instead, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## ANALYSIS

### *Defendants' Motions for Summary Judgment [67] and [69]*

In their respective motions for summary judgment, Defendants argue that the Plaintiff has failed to submit any competent evidence to support his claims, and thus, they are entitled to judgment as a matter of law. For the reasons set forth below, the undersigned recommends that the Defendants' motions be granted.

#### *Failure to Protect*

The Plaintiff alleges that he was housed in a dangerous area of WCCF, and that he was assaulted by other inmates on April 20, 2013. Plaintiff asserts that he personally spoke to each of the

4

named Defendants following the attack and asked to be transferred, but that they refused. The Plaintiff concedes that no further attacks occurred after April 20, and that he was ultimately transferred to SMCI three months after the attack.

"[T]he Eighth Amendment imposes on prison officials a duty to protect prisoners from violence at the hands of other inmates." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). "Prison officials are not, however, expected to prevent all inmate-on-inmate violence." *Id.* "[T]o establish a failure-to-protect claim under § 1983, [a plaintiff] must show that he [wa]s incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995); *see also Adames*, 331 F.3d at 512 ("Prison officials can be held for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm."). "In order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff repeatedly states that he was housed with gang members, although he had no association with any gang.[3] He also alleges that following the attack, Defendant Byrd told him that Plaintiff's housing unit was a dangerous area of WCCF.[4] These already bare facts, however, are unsupported by any evidence showing that the Defendants were subjectively aware that the Plaintiff was at a substantial risk of harm prior to the April 20 attack. Conclusory assertions that certain areas

---

[3]*See* Omnibus Order [38] at 2; Response [71] at 4; Motion for Summary Judgment [72] at 2.

[4]*See* Omnibus Order [38] at 2.

5

of a prison are well-known to be dangerous or violent are insufficient to establish the deliberate indifference of prison officials. *See,e.g., Stowe v. Enlers*, 2015 WL 4527365, at *4 (S.D. Miss. July 27, 2015) (holding that prisoner had failed to state a claim where the only evidence offered to demonstrate that Defendants should have known an assault was possible was that "Area 2 at SMCI . . . is well known for violence on inmates and staff and because violence is the everyday norm in SMCI.") (internal quotations omitted). Plaintiff's arguments are also undermined by the well-established principle that "as a practical matter, prisons are necessarily-dangerous places, which house society's most anti-social and violent people in close proximity with one another, thereby making it inevitable that some level of brutality among prisoners may occur." *Sanders v. Goodween*, 2013 WL 5818610, at *6 (M.D. La. Oct. 29, 2013) (citing *Farmer v. Brennan*, 511 U.S. at 858-59 (Thomas, J., concurring) (quotations marks, brackets, and ellipses omitted); *see also Vevrete v. Major*, 2011 WL 3269319, at *2 (W.D. La. July 29, 2011) ("[P]risons are dangerous places housing dangerous people.").

In an attempt to support his allegations, Plaintiff submits records reflecting that he was transferred to different units within WCCF in the weeks preceding the attack on April 20.[5] Plaintiff also provides several grievances he filed following the attack in which he requests to be transferred. However, these records do nothing to demonstrate that the named Defendants were aware the Plaintiff's housing situation was dangerous such that an attack was likely prior to April 20.[6]

---

[5]*See* Drill Down Report [72] at 5–7.

[6]The Plaintiff also submits several medical records regarding the injuries he sustained as a result of the attack. However, it is undisputed that the Plaintiff was attacked by other inmates and suffered injuries on April 20. At issue is whether the Defendants had subjective knowledge that the attack was likely to occur and failed to intervene.

At this stage of the proceedings, Plaintiff can longer rest on the allegations contained in his pleadings. *See Celotex*, 477 U.S. at 325-26. The Plaintiff must instead come forward with evidence illustrating a genuine dispute of material fact, and he must do more than re-assert the allegations contained in his complaint. *See Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (holding that once the movant has pointed out the absence of evidence supporting the nonmoving party's case, a party confronted with a motion for summary judgment is required to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.").

Plaintiff's also argues that the Defendants violated his rights in failing to transfer him after the alleged attack, but concedes that he sustained no further injury. The Plaintiff does not allege that he requested transfers prior to his assault. As outlined above, the Plaintiff requests monetary damages. Under the Prison Litigation Reform Act ("PLRA"), an inmate's recovery of money damages is barred absent a showing of a specific physical injury. 42 U.S.C. § 1997e(e). Accordingly, since the Plaintiff has failed to allege, much less establish, physical injury as a result of the Defendants' refusal to grant his transfer requests, he cannot recover his requested relief. *See Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005) ("Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury.").

In sum, the Plaintiff has failed to establish the absence of a genuine issue of material fact, and the undersigned recommends that the Defendants be granted summary judgment as to this claim.

### *Loss of Property*

The Plaintiff claims an unspecified WCCF employee stole his watch during a "shakedown" of the Plaintiff's housing unit. He argues that Defendant CCA, the company that operated WCCF

7

during the relevant time period, is responsible for the incident because its employees conducted the shakedown.

The Plaintiff's claim fails on two different fronts. First, "[u]nder the *Parratt/Hudson* doctrine, a state actor's random and unauthorized deprivation of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate post-deprivation remedy." *Alexander v. Ieyoub*, 62 F.3d 709, 712 (5th Cir. 1995) (citations omitted); *see also Hudson v. Palmer*, 468 U.S. 517, 533(1984); *Parratt v. Taylor*, 451 U.S. 527 (1981). The *Parratt/Hudson* doctrine applies when: "(1) the deprivation was unpredictable or unforeseeable; (2) predeprivation process would have been impossible or impotent to counter the state actors' particular conduct; and (3) the conduct was unauthorized in the sense that it was not within the officials' express or implied authority." *Smith v. Epps*, 326 Fed. App'x. 764, 765 (5th Cir. 2009). This doctrine applies whether the random unauthorized deprivations of property were negligent or intentional. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Hudson*, 468 U.S. at 533. However, "[c]onduct is not considered 'random and unauthorized' for purposes of the *Parratt/Hudson* doctrine if the state 'delegated to [the defendants] the power and authority to effect the very deprivation complained of.'" *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004) (quoting *Zinermon v. Burch*, 494 U.S. 113, 138 (1990)).

It is well-established that neither negligent nor intentional deprivations of property violate due process where there is an adequate state tort remedy available. *Daniels*, 474 U.S. at 328; *Hudson*, 468 U.S. at 533. The Fifth Circuit has upheld the dismissal of prisoners' suits for property deprivation because of the availability of state law remedies. *See, e.g., Myers v. Klevenhage*, 97 F.3d 91, 94-95 (5th Cir. 1996); *Murphy v. J.A. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994); *Marshall v. Norwood*, 741 F.2d 761, 763-64 (5th Cir. 1984).

Mississippi provides a remedy for the deprivation of Plaintiff's property. *See Johnson v. King*, 85 So. 3d 307 (Miss. App. 2012) (finding confiscation of inmate's drinking mug to violate the Takings Clause of the state constitution); *see also Lester v. Lee*, 2014 WL 2505666, at *2 (N.D. Miss. June 3, 2014) (finding that a plaintiff's remedy for the taking of property arises from Mississippi's Constitution and, therefore, is not foreclosed by the Mississippi Tort Claims Act's prohibition of inmates' claims against governmental entities and their employees acting within the course and scope of their employment); *Montgomery v. Palmer*, 2013 WL 5423910, at *4 (N.D. Miss. Sept. 26, 2013). It is Plaintiff's burden to establish that this post-deprivation remedy is inadequate. *Myers*, 97 F.3d at 94-95. Plaintiff has failed to allege, much less establish, that the remedy is inadequate.

Plaintiff has not alleged that the property deprivation was made in accordance with any policy, practice, or custom or was in any other way "authorized." *Smith*, 326 Fed. App'x. at 765. Accordingly, Plaintiff's remedy for the alleged property deprivation lies not in a Section 1983 action, but in a claim under state law. *See Sossamon v. Williams*, 270 Fed. App'x. 323, 325 (5th Cir. 2008) (holding that prisoner's claim was barred by the *Parratt/Hudson* doctrine where there was no genuine issue whether the officer's actions were random and unauthorized and where prisoner had an adequate post-deprivation remedy for the destruction of his property).

Second, the Plaintiff asserted at the *Spears* hearing that his sole reason for suing CCA is that it employed the WCCF employee who stole his property. It is well-settled that Section 1983 does not implicate supervisory or *respondeat superior* liability. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Rather, a supervisor may only be found liable under Section 1983 if it is personally involved in the constitutional deprivation or if there is "a sufficient causal connection between the

supervisor's wrongful conduct and the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also Coleman v. Houston Indp. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997) ("Only the direct acts of omissions of government officials . . . will give rise to individual liability under Section 1983."). Thus, even if a constitutional violation had occurred, Defendant CCA could not have been liable for it under *respondeat superior* theory. *See, e.g., Bush v. Viterna*, 795 F.2d 1203, 1206 (5th Cir. 1986) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-95 (1978)).

Accordingly, the undersigned recommends that the Defendants be granted summary judgment as to this claim.

*Plaintiff's Motion for Summary Judgment*

In his motion for summary judgment Plaintiff simply repeats his original allegations and submits various records and grievances that do nothing to support his claims or which simply confirm that he was attacked. Accordingly, due to the analysis of Plaintiff's claims *supra*, the undersigned recommends that his motion for summary judgment should be denied.

## RECOMMENDATIONS

For the reasons outlined above, the undersigned recommends that the Defendants' Motions for Summary Judgment [67] & [69] be GRANTED, that Plaintiff's Motion for Summary Judgment [72] be DENIED, and this matter be dismissed with prejudice.

## RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the

Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS, the 19th day of January, 2016.

s/ Michael T. Parker  
United States Magistrate Judge